## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE | : | |
| | : | |
| RANDY BENAVIDES BALDERAS | : | Case No. 16-52554-cag |
| | : | |
| DEBTOR | : | |
| | | |
| CAPITAL FARM CREDIT, PCA | : | |
| | : | Adv. No. _____ |
| Plaintiff | : | |
| | : | |
| Versus | : | |
| | : | |
| RANDY BENAVIDES BALDERAS | : | |
| | : | |
| Defendant | : | |

## ORIGINAL COMPLAINT OBJECTING TO THE DISCHARGE
## OF SPECIFIC DEBTS

CAPITAL FARM CREDIT, PCA, Plaintiff, complains of RANDY BENAVIDES BALDERAS, Defendant, as follows:

### PARTIES AND JURISDICTION

1.     Plaintiff Capital Farm Credit, PCA is a subsidiary of Capital Farm Credit, ACA. Capital Farm Credit, ACA is a federal Farm Credit System lending institution. Capital Farm Credit, PCA extends short to intermediate term credit to farmers, ranchers and rural residents. Loans made by Capital Farm Credit, PCA are typically secured by liens against operating assets, farm products, livestock, and proceeds. Capital Farm Credit PCA's principal office is located at 3000 Briarcrest, Suite 501, Bryan, Texas 77802.

2.     Defendant Randy Benavides Balderas is an individual who resides at 2049 FM 3006, Pleasanton, Texas. The Defendant filed for relief under chapter 11 of the Bankruptcy Code on November 3, 2016. No trustee has been appointed.

3.     The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157, and 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code  This proceeding arises under the Bankruptcy Code and arises in a case under chapter 7 of the Bankruptcy Code. This proceeding is within the core jurisdiction of the Court.  Venue in this Court is proper pursuant to 28 U.S.C. §1409.

## FACTS APPLICABLE TO ALL COUNTS

4.     Defendant is the 100% owner of Big Racques Ranches, LLC, a Texas limited liability company formed in March, 2015.  On information and belief, Capital Farm Credit avers that the Debtor and his wife Jacqueline are the two managing members of Big Racques Ranches, LLC.  At all times pertinent to this Complaint, the Defendant controlled the conduct of the business of Big Racques Ranches, LLC.

5.     Beginning in April 2015 Capital Farm Credit FLCA and Capital Farm Credit PCA made a series of long and intermediate term loans to Big Racques Ranches LLC and Randy Balderas, as co-makers, secured by property which Capital Farm Credit believes to be owned solely Big Racques Ranches, LLC. Capital Farm Credit PCA made a total of four loans.

6.     The First PCA Loan is evidenced by the Term Promissory Note dated May 7, 2015 in the original principal amount of $154,450.00 ("First PCA Note").  The loan had a payoff balance of $130,265.85 as of December 12, 2016. The First PCA Note is secured by the liens and security interest described in the Security Agreement (incorporated with the note in a single document) for the benefit of Capital Farm Credit, PCA, in the following property of Big Racques Ranches LLC:

a.      All livestock including but not limited to specific cattle described in the Security Agreement..

A true copy of the First PCA Note and Security Agreement is attached as **Exhibit A** and is incorporated by this reference.

7.      The Second PCA Loan is evidenced by the Promissory Note dated May 28, 2015, in the original principal amount of $150,000.00, as amended in April 2016 ("Second PCA Note").  The loan had a payoff balance of $152,181.11 as of December 12, 2016.  True copies of the Second PCA Note and Amendment are attached as **Exhibit B**.  The Second PCA Note is secured by the liens and security interests described in the Commercial Security Agreement dated May 28, 2015 in the following property of Big Racques Ranches LLC:

a.      All livestock including but not limited to specific cattle described in the Security Agreement;

b.      3 irrigation pivot systems.

A true copy of the Security Agreement is attached as **Exhibit C**.

8.      The Third PCA Loan is evidenced by the Promissory Note dated June 24, 2015 in the original principal amount of $165,600.00 ("Third PCA Note").  The loan had a payoff balance $178,222.59 as of December 12, 2016 ("Third PCA Note"). A true copy of the Third PCA Note is attached as **Exhibit D**.  The Third PCA Note is secured by the liens and security interests described in the Commercial Security Agreement dated June 24, 2015 in the following property of Big Racques Ranches LLC:

a.      All livestock, including the specific cattle described in the Security Agreement.

A true copy of the Commercial Security Agreement is attached as **Exhibit E**.

9.     The Fourth PCA Loan is evidenced by the Promissory Note dated December 16, 2015 in the original principal amount of $34,000.00 ("Fourth PCA Note"). The loan had a payoff balance of $35,684.02 as of December 12, 2016.  A true copy of the Fourth PCA Note is attached as **Exhibit F**. The Fourth PCA Note is secured by the liens and security interests described in the Commercial Security Agreement dated December 16, 2015 in the following property of Big Racques Ranches LLC:

a.     2 irrigation pivot systems and related equipment, casing, and pipe, as described therein.

A true copy of the Commercial Security Agreement is attached as **Exhibit G**.

10.     Big Racques Ranches, LLC is a Texas limited liability company which was formed in March, 2015.

11.     Defendant is a co-maker of the indebtedness which is owed to Capital Farm Credit, FLCA.   Defendant is the representative of Big Racques Ranches LLC with respect to the loans extended by Capital Farm Credit PCA.

12.     Capital Farm Credit PCA has declared a default under the First PCA Loan, the Second PCA Loan, the Third PCA Loan and the Fourth PCA Loan.  The first payment default occurred in July 2016 when the borrowers failed to pay annual installment then due on the Third PCA Loan.  There have been subsequent payment defaults in Second PCA Note and the Fourth PCA Note.  The borrowers are also in payment default on a loan of approximately $1 million owed to Capital Farm Credit FLCA secured by real property owned by Big Racques Ranches

LLC. All of the obligations owed to Capital Farm Credit, FLCA and Capital Farm Credit, PCA are cross-collateralized and, for the most part, cross-defaulted.

13.　　As a result of the borrowers' default, On or about September 6, 2016, Capital Farm Credit PCA gave notice to Big Racques Ranches, LLC of the opportunity to participate in distressed loan restructure negotiations.

## COUNT ONE – MISREPRESENTATIONS AND ACTUAL FRAUD
## 11 U.S.C. §523(a)(2)(A)

14.　　Plaintiff incorporates by this reference the allegations of the foregoing paragraphs one through thirteen.

15.　　As an integral part of the negotiations between Big Racques Ranches LLC and Capital Farm Credit, PCA with respect to the Second PCA Loan, Defendant represented that the borrower would use the money to support the cattle operation and herd of Big Racques Ranches, LLC including the payment of general operating expenses.

16.　　On or about June 1, 2015, Capital Farm Credit PCA advanced $148,500.00 under the Second PCA Loan.  Capital Farm Credit PCA wired the money to Defendant's account at Capital One.

17.　　Based upon the Defendant's records produced to Capital Farm Credit, PCA, the Defendant used no less than $56,000.00 of the loan proceeds for purposes other than general operating expenses of Big Racques Ranches LLC or the support of its cattle operation.

18.　　Defendant falsely represented to Plaintiff that the loan proceeds would be used to support the operations of Big Racques Ranches LLC.

19.     When Defendant made the representation to Plaintiff, he knew it to be false and that a substantial portion of the loan proceeds would be used for other purposes.

20.     Capital Farm Credit PCA justifiably relied on Defendant's misrepresentation when it advanced the sum of $148,500.00 under the Second PCA Loan.

21.     Plaintiff was injured by Defendant's misrepresentations because loan funds were used for purposes other than the support of the operations of the Big Racques Ranches, LLC and the cattle operation.

22.     The injury constitutes a debt for money which obtained by false pretenses, false representations, or actual fraud, and is nondischargeable pursuant to the provisions of 11 U.S.C. §523(a)(2)(A).

<u>**COUNT TWO – WILLFUL AND MALICIOUS INJURY**</u>
<u>**11 U.S.C. §523(a)(6)**</u>

23.     Plaintiff hereby incorporates by this reference the allegations of the foregoing paragraphs one through thirteen.

24.     On or about September 21, 2016 Big Racques Ranches, LLC, without the permission of Capital Farm Credit PCA and in violation of the conditions of its loan, sold approximately 85 head of cattle and failed to remit the proceeds to Capital Farm Credit PCA.

25.     The terms of the various PCA loans prohibit the sale of collateral without the permission of Capital Farm Credit, PCA.  Further, in the event of a sale, Big Racques Ranches LLC is required to account for the proceeds and to pay them to Capital Farm Credit, PCA.  Big Racques Ranches, under the control of the Defendant a) sold cattle without permission; b) failed to account for the proceeds; and c) did not remit the proceeds to Capital Farm Credit, PCA.

26.     Defendant's actions were objectively certain to cause Capital Farm Credit PCA harm as a result of the reduction of its livestock collateral.

27.     Defendant's actions occurred subsequent to the borrowers' payment default under the Third PCA Note.

28.     Defendant's actions occurred subsequent to Capital Farm Credit having given notice to the borrowers of the opportunity to participate in distressed loan restructuring.

29.     Plaintiff has suffered actual damages as a result of such malicious injury to its collateral in the amount of $56,753.17.

30.     Such damages constitute a debt which is nondischargeable pursuant to 11 U.S.C. §523(a)(6).

FOR THESE REASONS, PLAINTIFF CAPITAL FARM CREDIT PCA requests that the Court enter judgment in it favor and against DEFENDANT RANDY BENAVIDES BALDERAS, in an amount no less than $112,753.17, with findings and conclusions that such amount shall not be discharged in this case.  Plaintiff requests such other and further relief to which he may show himself justly entitled.

Submitted this 27th day of February, 2017.

BRANSCOMB PC
711 Navarro, Suite 500
San Antonio, Texas  78205
Telephone     210-598-5401
Facsimile     210-598-5405
Email         pautry@branscombpc.com


_____/s/ Patrick H. Autry_____
Patrick H. Autry
State Bar No. 01447600
ATTORNEYS FOR CAPITAL FARM CREDIT PCA

**EXHIBIT A**

# Capital Farm Credit, PCA
# TERM
# APPROVAL NOTICE AND LOAN AGREEMENT

Capital Farm Credit, PCA  whose address is 3000 Briarcrest Dr. Suite 601 Bryan, TX 77802 ("**Lender**") **has approved your application for a loan under the terms and conditions set out below:**

**DATE OF APPROVAL:**       April 30, 2015

## OTHER CONDITIONS:

Multi Additional Terms

AGREEMENT TO PATRONAGE DISTRIBUTION

Being a Stockholder of Capital Farm Credit, ACA (Association) has many benefits.  One of those benefits is that the Association, under the direction and at the discretion of its Board of Directors, may elect to share its earnings with its Stockholders by paying patronage distributions.

As a Stockholder of Capital Farm Credit, ACA, I hereby consent that the amount of any distribution with respect to my patronage of the Association occurring after January 1, 1997, which is paid in cash, a qualified written notice of allocation or other property [in accordance with 26 U.S.C. 1385(a)] and which is received by the undersigned from the Association, will be taken into account as income by me at the stated dollar amount of such allocation, in the manner provided for in 26 U.S.C. 1385 (a), in the taxable year in which such written notices of allocation are received by me. The Association may, at its option, apply the amount of any cash distribution to my loan rather than making disbursements to me.  In that event, I agree to take into account that amount as income just as though it were received by me.

Unless otherwise directed on the Patronage Account Main Holder Form, Power of Attorney is hereby given to the primary applicant to act for and on behalf of all account co-holders in all matters pertaining to this loan, including the right to vote the Association stock and to receive payment of dividends or patronage and the proceeds of refunded stock or participation certificates as well as the distribution or retirement of any allocated or unallocated equities.  In the event of a conflict with regard to who is authorized to act on behalf of the stockholders in this regard, the Association may pay such proceeds to any stockholder and the stockholder agrees to indemnify the Association against any claims, costs, loss or expenses relating to said payment.

VOTER DESIGNATION

Randy Balderas is hereby designated to act on behalf of the undersigned joint stockholders to carry out any voting privileges associated with stock ownership related to this loan or any other loan in accordance with the Association's bylaws. This designation replaces and supersedes any previous designation.

LIMITED PARTITION & SURVIVORSHIP AGREEMENT

THAT, for and in consideration of the sum of $10.00 cash, and the further consideration of the mutual benefits to be derived by this Agreement, the receipt and sufficiency of which is hereby severally acknowledged, the undersigned, as husband and wife, and by virtue and pursuant to the Texas Family Code, and the Texas Estates Code, both as amended; do hereby convey each to the other all of their undivided interests in and to the below described Farm Credit System stock or participation certificates as their respective separate property and each represents to the other that this is an equal and fair partition of said interest.

The undersigned hereby enter into this Agreement, for and in consideration of the mutual Agreement set out above, do hereby agree to and authorize the purchase, issuance, or reissuance of any stock or participation certificates in the names alternatively of each of us "joint tenants with right of survivorship," and for any dividends, distributions or refunds on said stock or participation certificates to be paid in a like manner; said stock or participation certificates as carried on the books of Capital Farm Credit, ACA of San Antonio, Texas.

CREDIT LIFE INSURANCE

I understand that credit life and disability insurance may be available through the Association subject to the eligibility requirements of the insurance company.  If such insurance is required as a condition of my loan, I understand that I (we) may choose to purchase that insurance from a source other than this Association.

____X____ I do not request credit life insurance.

_____ I do request Credit Life Insurance

After a loan has been granted to me and life insurance has been effected, and my loan is extended, or increased, or becomes delinquent, I do hereby request and authorize the Capital Farm Credit, ACA at its option, to have my life insurance continue for the amount of the original insurance or for any increases, so long as the amount does not exceed my total loan commitments or the limit of insurance that I am eligible to buy at my age.

ADDITIONAL TERMS

By signing below, I hereby acknowledge that I was furnished a copy of the booklet or Form 574 explaining the nature of my investment in Capital Farm Credit, ACA stock or participation certificates and disclosing the benefits and risks associated with this investment.  I further acknowledge that I have received Capital Farm Credit's most recent annual or quarterly report and a copy of its capitalization bylaws. I understand that I have a right to receive copies of all documents which I have signed in connection with any Capital Farm Credit loan and I acknowledge that I have received such copies.

FINANCIAL STATEMENTS: Capital Farm Credit (CFC) retains the right to obtain current credit and financial information from all liable parties and guarantors associated with this loan or for any loan(s) involving CFC and said parties, for any matter(s) associated with said loan(s) including, but not limited to, any and all servicing action(s) taken in connection herewith. CFC will determine the financial information required from time to time and make the parties aware of the reporting requirements in writing. In the event the parties do not provide the required information within the time frames established by CFC, the loan(s) may be subject to the default terms listed in their respective note(s).

Financing Statements, Security Agreements and Certificates of Title (as Applicable) to be obtained on: All livestock now owned and hereafter acquired but not limited to: 13 Black Motley cross-bred heifers, 17 Brangus cross-bred heifers, 20 Black Motley and Brangus cross-bred exposed heifers, 3 Brangus certified bulls , 1 registered Brangus bull, 50 crossbred heifers and 2 Brangus Bulls.

See Attached Incorporated General Conditions

Signature: _M Sla_

         Loan Officer

# PROMISSORY NOTE

Lender's Name and Address: Capital Farm Credit, PCA  whose address is 3000 Briarcrest Dr. Suite 601 Bryan, TX 77802. "You" means Lender, its successors and assigns.

For value received, I, whether individually, or jointly and severally, promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of One Hundred Fifty Four Thousand Four Hundred Fifty And Zero/100  Dollars $( 154,450.00).

☒ **Single Advance:**  No additional advances are contemplated under this note.

☐ **Multiple Advance:**  The Principal sum shown above is the maximum amount of principal I can borrow under this note. I will receive an initial advance in the amount of $_____ and future principal advances are contemplated.

☐ **Open End Credit:**  You and I agree that I  may borrow up to the maximum amount of principal more than one time.  This feature is subject to all other conditions and expires on

☐ **Closed End Credit:**  You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:**  I agree to pay interest on the outstanding principal balance from the date principal is advanced until paid at the rate or rates herein provided.

> The initial rate of interest payable on this note shall be 4.7300 percent per annum. Following closing and beginning on the first day of every successive calendar month thereafter (the "Interest Rate Change Date") until maturity the interest rate shall be 455.0000 basis points (4.55 percentage points) above (the "Margin") the One-Month London Interbank Offered Rate ("LIBOR") as quoted in the "Money Rates" section of the Wall Street Journal on the last business day of the prior month and rounded to the nearest basis point (0.01 percentage points) (the "Index"). The interest rate will change during the term of the loan until maturity on each Interest Rate Change Date if there is a change in the Index. In the event the Wall Street Journal or the LIBOR interest rate is no longer available as a source for the Index the Lender may select another source of comparable information in its sole discretion. The rate shall not exceed the maximum lawful rate applicable to the holder.

**ACCRUAL METHOD:**  Interest will be calculated on a Actual 365/366 basis.

**POST MATURITY RATE:**  I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:

☐  on the same fixed or variable rate basis in effect before maturity (as indicated above).

☒  at a rate equal to the rate of interest applicable to this note on the date of maturity plus an additional four percent (4.000 %) per annum.

**PAYMENT:**  I agree to pay this note as follows:

The indebtedness shall be payable in Five ( 5 )  Annual  installments beginning on June 01, 2016 and thereafter on the first day of each June of each calendar year until the Maturity Date  when the indebtedness, both principal and interest, must be fully paid.

☐   Interest only payment(s) shall be payable on the  installment due date(s).

After the initial payment of interest only (if applicable), this note shall be payable:

☒   in successive equal installments of principal and interest in an amount sufficient to amortize the indebtedness over the term of the loan, the amount being subject to adjustment to reflect any increase or decrease in the interest rate, if applicable.

☐   in successive installments of principal in the amount of $  plus accrued interest on the unpaid principal balance.

I understand and agree that the first installment will include all interest accrued on the unpaid principal balance from the date principal is first advanced.

Maturity Date: 06/01/2020

**DEFAULT INTEREST:**  Prior to maturity of this note, any amount owing under this note which is not paid when due, and any advance made by the holder of this note pursuant to any of the Loan Documents, shall bear interest at a default rate equal to the rate in effect at the time repayment of such amount or advance is received by the holder of this note plus an additional four percent (4.000 %) per annum.  Any such amount or advance which is not paid prior to maturity of this note shall bear interest at a default rate equal to the rate of interest applicable on the date of maturity plus an additional four percent (4.000 %) per annum from the date such amount is due or such advance is made, and such amount or advance plus accrued default interest thereon shall be added to the unpaid principal at maturity.  Notwithstanding the foregoing, if the holder of this note is not a Farm Credit System Institution, then the default rate shall be limited so that it shall not exceed a rate that will result in an effective yield in excess of the maximum lawful rate. If any amount owed under this note or the loan documents is not paid when due, the holder shall be entitled to collect default interest from the date(s) of default in an amount produced by applying the applicable default interest rate as set out above to the amount in default.  If said default(s) is not cured within fifteen (15) days of the occurrence of such default(s), the holder shall be entitled to collect an additional default interest charge of $25.00.

☐   Prepayment .

☒   Post Default Interest Adjustment.

In addition to the default interest provided for herein, if borrower defaults and such default(s) is not cured within forty-five (45) days of the occurrence of such default(s), the rate of interest (whether fixed, determined in the discretion of holder, by application of a margin to an index, or otherwise) applicable to all unpaid amounts under the note or loan documents may be increased, at the option of the holder of this note, (which will result in a corresponding increase in the default interest rate), provided that the total of all rate increases made pursuant to this sentence (exclusive of the $25.00 default interest charge(s), and the default interest provision established herein) shall not exceed two percent (2.0000 %).

**DELINQUENCY AND PREPAYMENT:**  If I fail to make any payment when due, or if I am in default of anything I have agreed to do in any Security Agreement I may have given you, you may require me to immediately pay you all that I owe you under this Note without notifying or demanding anything further of me and I hereby waive Presentment, Dishonor, Notice of Dishonor and Protest. If this loan is secured, as indicated

below, you will have all of the rights of a Secured Party under the Uniform Commercial Code. I may prepay a part of, or the entire balance of this loan without penalty unless we specify to the contrary on this Note. Any partial prepayment will not excuse or reduce any later scheduled payments until this note is paid in full.

# SECURITY AGREEMENT

**SECURITY:**
☒ If marked here, in order to secure all obligations under this loan, or any loan(s) I have with you, and any extensions, renewals or modifications thereof, I, the undersigned, grant you a security interest under the Uniform Commercial Code, according to the following, in the following described property. If the proceeds in this loan pay off the balance in a prior loan with you, this loan is a renewal of that prior loan.
1. The following described property: All livestock now owned and hereafter acquired but not limited to: 13 Black Motley cross-bred heifers, 17 Brangus cross-bred heifers, 20 Black Motley and Brangus cross-bred exposed heifers, 3 Brangus certified bulls , 1 registered Brangus bull, 50 crossbred heifers and 2 Brangus Bulls; along with replacements, accessions, substitutions and the progeny thereof as well as the proceeds from the sale of or disposition of said security.
Together with all replacements and substitution thereof, and all improvements, betterments and accessories thereto, and all other equipment, parts, accessories, and attachments, now or hereafter installed in, affixed to or used in connection with said property, along with accessions and the progeny thereof as well as the proceeds from the sale of or disposition of said security.
2. The proceeds of any personal property in which I have hereby granted you a security interest.
3. The proceeds of any insurance required under and/or included in this loan. (Returned or unearned premiums are considered proceeds). All the above are called "Collateral" under the terms of the Security Agreement.
4. If any security interest in personal property is granted, or retained, I waive the benefit of any personal property exemption as to such property.
5. DEFAULT/REMEDIES. If I, or anyone do not pay you as promised or if you shall deem any indebtedness secured by this Security Agreement insecure or if you deem the Collateral insecure or in danger of misuse, then this Security Agreement at your election may be deemed breached and the full amount owed you secured by this Security Agreement, together with your expenses incurred in repossessing, storing or selling the Collateral, shall immediately become due and payable. In any such event you shall have all remedies of a Secured Party under the Uniform Commercial Code, including the right to take immediate possession of the Collateral without legal process and without demand, and for this purpose you may enter upon the premises where the collateral may be located and remove the Collateral without your action constituting a trespass. You may take possession of any other property contained in the Collateral at the time of repossession, and hold it temporarily for me without any responsibility or liability to me. I will notify you by registered or certified mail after any repossession and before sale of the Collateral if I claim that any articles of personal property not covered by this Security Agreement were repossessed. If I fail to do so, I will give up any claim for this property. You may require me to assemble and make the Collateral available to you at a place to be named by you, which is reasonably convenient to both of us. You shall give me reasonable notice of the time and place of any public sale of the Collateral or of the time after which any private sale or any other intended disposition of the Collateral is to be made. If you mail me, postage prepaid, notice addressed to me at the address shown on your records at least 5 days prior to the sale or disposition, you shall have given me reasonable notice. You may become the purchaser of the Collateral at any public sale. If the proceeds of the sale are not sufficient to pay the obligations owed you, I shall pay the remaining amount unpaid with interest at the highest lawful rate allowed by the law, but no higher than the rate(s), including all default interest and penalties, stated on the face.
6. I authorize you to file a financing statement covering the property.

## INTEREST RATE DISCLOSURE

The following disclosure is made in accordance with Section 4.13(a) of the Farm Credit Act of 1971, as amended. The "effective rate" is not the same as the "Annual Percentage Rate" under Federal Truth-in-Lending.

| | STATED INTEREST RATE (The rate of interest currently applicable to your loan.) | EFFECTIVE INTEREST RATE* (The stated rate of interest for your loan adjusted to take into account your required ownership of stock or participation certificates and origination charges.)** |
|---|---|---|
| If the loan has an interest rate fixed for the life of the loan. | % | % |
| If loan is a variable/ adjustable rate loan. | 4.7300% | 5.0097% |

*This is a projection subject to change should particular loan provisions be modified during the term of the loan, such as the amount of stock or participation certificates or the timing of repayment. You will be notified 10 days prior to any increase in the effective rate due to a stock adjustment. You will be notified of any increase or decrease in the stated rate. Notice requirements are set by regulation and are subject to change in the future.

** Stock (or participation certificates) and origination charges total $1,250.00 and include the following:

Stock $1,000.00, Association fee $250.00,

This is an ADJUSTABLE RATE LOAN - the stated rate of interest is subject to change during the life of the loan and may be changed as follows:

Interest rates on ADJUSTABLE INDEXED INTEREST RATE LOANS and payment amounts may change periodically based on the fluctuation in the index value. Unless fixed for a specific period of time initially (or unless limited by a cap or a floor), the interest rate will be based on an index rate plus a margin and may, as provided in the promissory note, increase or decrease monthly, if based on a U.S. Prime or LIBOR product, without limitation depending upon the movement of the index and may increase if there is an increase in the margin contained in the note. The interest rate will be rounded. Information about the indexes are published in the WALL STREET JOURNAL. Written notices of interest rate changes will be provided no later than 45 days after the effective date of the change.

*Default:* Where applicable, the stated interest rate may increase as a result of default. See your promissory note for more information.

*Association Stock:* Capital Stock or Participation Certificates purchased or held by member/borrowers is an at-risk investment.

Loan options: The lender offers loans with maturities not to exceed ten years (or 15 years for certain aquatic loans), with interest rates which are variable, adjustable, or which are fixed for certain specified periods and which may then, under certain conditions which may involve the payment of a fee, provide the borrower an opportunity to seek an additional fixed period or adjustable rate period. These interest rate conversion opportunities are subject to change or termination.

See your contract documents for further information on loan terms and conditions.

BORROWER RIGHTS:

This loan is subject to the following Borrower Rights as set forth in the Farm Credit Act of 1971, as amended, 12 U.S.C. § 2199, et seq.

*Access to Documents (§2200).* At closing, Borrower (or Borrower's agent, if applicable) shall receive copies of loan documents signed by Borrower. Upon request thereafter, Borrower is entitled to: (1) All documents signed or delivered by Borrower; and (2) copies of Creditor's charter and bylaws.

*Notice of Action on Application (§2201).* Creditor shall provide prompt written notice of action taken on loan and restructure applications, including notice of a right to review if the loan or restructure application is denied or if the loan request is reduced.

*Credit Review Committee/Restructuring Distressed Loans (§2202 and §2202a-c).* Borrower is entitled to the following: the right to a review by a Credit Review Committee of a denial of or a reduction in a loan request or a denial of a restructure request; the right to seek restructuring of a distressed loan; if principal indebtedness is forgiven as part of a restructure, Creditor must write off an equal dollar amount of stock obligation. See Creditor's Distressed Loan Restructuring Policy for a complete explanation of these rights, which policy is available upon request.

*Miscellaneous (§2202d, e).* Creditor may not foreclose for failure to provide additional collateral if Borrower has made all accrued payments. Creditor may not require a reduction in outstanding principal balance which exceeds regularly scheduled principal installment except in limited circumstances. If Borrower pays all accrued payments, including penalties, Creditor may not accelerate loan based solely on Borrower's past untimely payments. If Creditor places borrower's loan in non-accrual status and this results in an adverse action to Borrower, Creditor shall notify borrower of the change in his/her status, which action may be subject to review. Creditor may not require a Borrower who has pledged agricultural property to waive any state mediation rights.

*Right of First Refusal (§2219a).* When the Creditor first elects to sell or lease agricultural real property acquired by Creditor which was previously owned by Borrower, the Creditor must first notify the Borrower of his/her right to purchase or lease the property for a price or rental rate equal to its appraised fair market value or appraised fair rental value, as appropriate.

If you have any questions concerning the foregoing information, please contact your loan office.

# GENERAL CONDITIONS

DISBURSEMENT OF PROCEEDS
This Loan may be disbursed in 1 or more advances or disbursements by Lender check, draft or wire transfer under conditions established herein and which are to be used for the purposes specified in the loan application.

AT-RISK STOCK/PARTICIPATION CERTIFICATES
As a condition to the Lender's Agreement to make the Loan, Borrower(s) agrees to purchase and pay for, or to the transfer of outstanding unretired stock or participation certificates from prior or existing loans in, such amounts of the Lender's capital stock or participation certificates as are required by the Lender's capitalization bylaws and capital plan. If the purchase price of stock or participation certificates is included in the principal balance of the Loan, it shall bear interest as provided in the Note until paid. Borrower(s) further agrees and understands that such capital stock and participation certificates are an at-risk investment and are subject to retirement at the discretion of the Lender's board of directors and may be retired only when the Lender meets the minimum permanent capital standards prescribed by the Farm Credit Administration regulations.

FINANCIAL STATEMENTS
Current financial and income statements must be provided by Borrower(s) upon notification from the Lender.

FUNDS HELD/FUTURE PAYMENT FUND
Funds may be placed with the Lender under various advance conditional payment programs. These funds will earn interest at rates established by the Lender, and may vary at its discretion.

INCORPORATION OF TERMS
The terms and conditions of this Approval Notice and Loan Agreement may be incorporated into the deed(s) of trust, mortgage(s), security agreement(s) and other security documents taken by the Lender as collateral for the Loan. Any default in the terms and conditions of this Loan Agreement or Borrower(s) failure to meet any condition(s) established herein shall constitute a default in the security documents.

FALSE STATEMENTS
It should be understood that the Lender reserves the right to decline the completion of this loan in the event that the information and representations in the loan application be found to be false or materially misleading, should any other indebtedness of Borrower(s) be in default prior to closing or should any of the conditions set out herein not be met. In such event, the Lender shall not be liable for any expenses or loss, whether real or consequential, incurred by Borrower(s).

VARIABLE INTEREST RATE PERIOD
During any time period when the variable interest rate is chargeable, it shall be established by the Lender.

PRIVACY NOTICE
NOTICE: Farm Credit Administration (FCA) Regulations require the Lender and/or any agent to protect the confidentiality of all information regarding a borrower's character, credit standing, and property. Accordingly, the Lender and/or any agent may not exhibit or quote your confidential information to third parties except with your written consent or under other very limited circumstances set forth in the regulations. The regulations permit the Lender to share your confidential information with Lender's affiliates/associations/entities for the purposes of extending credit, providing related services, or collecting loans, and permit the Lender and/or any agent to provide loan pay-off information to bona fide third party lien-holders. These regulations also

permit the Lender and/or any agent to release lists of borrowers to persons who deal in farm products or livestock for the purposes of complying with the Food Security Act of 1985 and to release lists of stockholders to other stockholders for the purposes of communicating on matters relating to the business operations of the Lender and/or any agent. The full text of the regulations may be found at Title 12, Part 618, Subpart G, Sections 618.8300-618.8330 of the Code of Federal Regulations, which is accessible at the FCA web-site www.fca.gov, or is available from the Lender and/or any agent upon written request.

TAXES
All taxes or other assessments on the property which are due and payable are to be paid at or prior to closing.

INSURANCE
If flood, fire and extended coverage, or other insurance is required to be maintained covering the insurable buildings specified, an acceptable policy containing mortgagee clause in favor of the Lender as mortgagee is to be furnished. The amount of insurance required is the minimum amount set for protection of the Lender. You may wish to carry additional insurance so as to have full protection.

BORROWER COSTS
The costs of abstracts, title examination, and/or title insurance, fire and extended coverage insurance, required environmental audits, if any, and recording fees are to be paid by you. Closed loan fees payable by Borrower(s) will be financed unless otherwise requested by Borrower(s) and may be subject to change.

ENVIRONMENTAL DISCLOSURE
By execution hereof, the Borrower(s) represent and warrant to Lender that Borrower(s) have made Lender aware of any contamination of, or of the existence of any environmental hazards upon, the security for the loan of which they are aware.

SUBSEQUENT TRANSFER
Lender intends to retain ownership of the Loan, but in the event that Lender transfers the Loan to another holder that is not a F.C.S. institution, that holder will be obligated by the agreement to accept the transfer of the Loan to abide by the same borrower rights provisions of the Farm Credit Act of 1971, as amended, as a qualified lender is then obligated to provide under the Act, unless the borrower has consented to the sale and agreed to waive the borrower's statutory borrower rights.

COPY OF APPRAISAL REPORT
You have the right to a copy of the appraisal report used in connection with your application for credit, if the collateral for the loan contains a dwelling. If you wish a copy, please write to the Lender that processed your application. You have 90 days from the receipt of this notice to request a copy. You may be required to pay for the cost of the report prior to receiving a copy. The Lender is also permitted to require reimbursement of photocopy and postage costs.

TERRITORIAL CONCURRENCE
This Approval is subject to territorial concurrence, if necessary, from any and all relevant Farm Credit institutions.

**SECURITY:**
It is understood that any security must be of a value to support this loan.
Unless otherwise agreed to by Lender in writing, Borrower agrees to promptly account for and pay to Lender all of the proceeds of any disposition of collateral securing the loan, which proceeds shall be subject to application to the Loan in Lender's sole discretion. Failure of Borrower to pay and account for proceeds of such disposition of collateral shall constitute a default under this Approval Notice and Loan Agreement, the Note and the Loan Documents.

This loan is cross-defaulted with any and all other loan(s) Borrower has with Lender or the Lender's affiliate(s).

WAIVER OF TRIAL BY JURY
THE GRANTORS /DEBTORS/BORROWERS/MAKERS/GUARANTORS AND OTHER PARTIES BOUND UNDER THE LOAN DOCUMENTS HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, AND THE LENDER/SECURED PARTY BY ITS ACCEPTANCE OF THE PROMISSORY NOTE AND THE SECURITY AGREEMENT/DEED OF TRUST/MORTGAGE AND OTHER LOAN DOCUMENTS IRREVOCABLY AND UNCONDITIONALLY WAIVES, ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR OTHERWISE RELATING TO THE PROMISSORY NOTE, THE SECURITY AGREEMENT, THE DEED OF TRUST, THE MORTGAGE, GUARANTEE OR ANY OTHER LOAN DOCUMENT OR THE OBLIGATIONS THEREUNDER. ALL OF THE AFORESAID PARTIES SHALL HEREINAFTER BE REFERRED TO AS THE "PARTIES HERETO." THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE PARTIES HERETO WITH FULL AWARENESSOF THE LEGAL CONSEQUENCES OF IT, AND THE PARTIES HERETO HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON OR ENTITY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO ENTERING INTO THIS AGREEMENT. THE PARTIES HERETO ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL. EACH PARTY HERETO FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL AND HAS VOLUNTARILY CHOSEN NOT TO DO SO.

SPECIAL PROVISIONS: THIS LOAN APPROVAL NOTICE AND LOAN AGREEMENT IS ALSO SUBJECT TO THE GENERAL CONDITIONS INCLUDED HEREWITH AND THE REPRESENTATIONS CONTAINED IN YOUR APPLICATION FOR THE LOAN. THIS LOAN APPROVAL NOTICE AND LOAN AGREEMENT TAKES THE PLACE OF ANY PREVIOUS NOTICE THAT MAY HAVE BEEN ISSUED.

ACCEPTED AND AGREED: The undersigned hereby agree(s) to and is bound by the terms and conditions of this Approval Notice and Loan Agreement, the Promissory Note, the Security Agreement and the Disclosure(s) as contained herein and acknowledge(s) receipt thereof. (All parties who sign the note and/or collateral documents will be required to sign this Approval Notice and Loan Agreement at closing.) The undersigned hereby acknowledge(s) receipt of a copy of this statement.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

EXECUTED this the 7th day of May, 2015.


Big Racques Ranches, LLC

By: _____
     Randy Balderas, Managing Member


_____
Randy Balderas

**EXHIBIT B**



# Promissory Note

| | | |
|---|---|---|
| **BORROWER'S NAME AND ADDRESS** | Capital Farm Credit, PCA whose address is | **Loan Number** 268100259 |
| Big Racques Ranches, LLC, 748 E Hinds, Charlotte, TX, 78011 | 3000 Briarcrest Dr. Suite 601 | **Date** 5/28/15 |
| Randy Balderas PO Box 891, Charlotte, TX, 78011 | Bryan, TX 77802 | **Maturity Date** 06/01/2018 |
| | | **Loan Amount** $150,000.00 |
| | **LENDER'S NAME AND ADDRESS** | **Renewal Of:** |
| "I", whether individually, or jointly and severally, includes any and all of the undersigned. | "You" means the lender, its successors and assigns. | **Note Dates** | **Amount** |

For value received, I, whether individually, or jointly and severally, promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of Qne Hundred Fifty Thousand And Zero/100 Dollars $( 150,000.00 ) .

**Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. I may receive an initial advance and future principal advances are contemplated.

**DISBURSEMENTS OF PRINCIPAL-REVOLVING LINE-OF-CREDIT:** Subject to the terms hereof, until the maturity date of this Note is reached, unless limited otherwise herein, the Lender may make disbursements of principal from time to time at the request of the Borrowers until such time as the outstanding principal balance hereunder equals the Principal sum of this Note, provided however, that the Lender shall have the right to refuse and withhold the making of any disbursements of principal hereunder, including but not limited to the right to dishonor any and all checks or drafts drawn, or advances initiated by the Borrowers, if at any time during the term thereof:

(a) the recovery value (as determined under applicable Farm Credit Administration regulations) of the collateral given as security for payment of the indebtedness evidenced hereby is insufficient to repay the total indebtedness then outstanding plus the requested disbursement;
(b) the requested disbursement is for a purpose other than that set forth in the Borrower's loan application and approved by the Lender;
(c) any loan proceeds previously disbursed hereunder have been used for a purpose other than that for which the same were authorized to be used;
(d) the Borrowers have breached any of the terms or conditions contained in any loan agreement or loan closing letter executed or furnished in connection herewith; or
(e) the Borrowers have defaulted under the terms or provisions of this Note, any loan agreement, or under any security instrument or agreement securing the same or securing any other indebtedness to the Lender, or any condition or event which would entitle the Lender or its assigns to declare a default hereunder and accelerate the entire indebtedness then outstanding develops or occurs.

TO THE EXTENT REPAYMENTS ARE APPLIED TO THE ORIGINAL PRINCIPAL AMOUNT OUTSTANDING FROM TIME TO TIME UNDER THIS NOTE, SUCH REPAYMENTS SHALL REINSTATE IN THE BORROWERS A RIGHT TO FURTHER DISBURSEMENTS OF SUCH AMOUNTS, SUBJECT TO THE LENDER'S RIGHT TO REFUSE AND WITHHOLD THE MAKING OF ANY FURTHER DISBURSEMENTS AS HEREINABOVE SET FORTH.

**INTEREST:** I agree to pay interest on the outstanding principal balance from the date principal is advanced until paid at the rate or rates herein provided.

The initial rate of interest payable on this note shall be 4.7300 percent per annum. Following closing and beginning on the first day of every successive calendar month thereafter (the "Interest Rate Change Date") until maturity the interest rate shall be 454.0000 basis points (4.54 percentage points) above (the "Margin") the One-Month London Interbank Offered Rate ("LIBOR") as quoted in the "Money Rates" section of the Wall Street Journal on the last business day of the prior month and rounded to the nearest basis point (0.01 percentage points) (the "Index"). The interest rate will change during the term of the loan until maturity on each Interest Rate Change Date if there is a change in the Index. In the event the Wall Street Journal or the LIBOR interest rate is no longer available as a source for the Index the Lender may select another source of comparable information in its sole discretion. The rate shall not exceed the maximum lawful rate applicable to the holder.

**ACCRUAL METHOD:** Interest will be calculated on a 30/360 basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:

☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).

☒ at a rate equal to the rate of interest applicable to this note on the date of maturity plus an additional four percent (4.000 %) per annum.

**PAYMENT:** I agree to pay this note as follows:

Principal: I agree to pay the principal on demand, but if no demand is made, then on 06/01/2018.

Interest: I agree that interest shall be payable upon demand, but if no demand is made, then it shall be paid Monthly beginning on 07/01/2015, and regularly thereafter on the First day of each month of each year, if such payment date(s) occur prior to the final maturity date of 06/01/2018, at which time all accrued but unpaid interest shall be due and payable. If not paid when scheduled, unpaid interest may be compounded and interest shall accrue as set out herein on the amount so compounded.

**DEFAULT INTEREST:** Prior to maturity of this note, upon any amount owing under this note which is not paid when due, and any advance made by the holder of this note pursuant to any of the Loan Documents, shall bear interest at a default rate equal to the rate in effect at the time repayment of such amount or advance is received by the holder of this note plus an additional four percent (4.000 %) per annum. Any such amount or advance which is not paid prior to maturity of this note shall bear interest at a default rate equal to the rate of interest applicable on the date of maturity plus an additional four percent (4.000 %) per annum from the date such amount is due or such advance is made, and such amount or advance plus accrued interest thereon shall be added to the unpaid principal at maturity. Notwithstanding the foregoing, if the holder of this note is not a Farm Credit System Institution, then the default rate shall be limited so that it shall not exceed a rate that will result in an effective yield in excess of the maximum lawful rate. If any amount owed under this note or the loan documents is not paid when due, the holder shall be entitled to collect default interest from the date(s) of default in an amount produced by applying the applicable default interest rate as set out above to the amount in default. If said default(s) is not cured within fifteen (15) days of the occurrence of such default(s), the holder shall be entitled to collect an additional default interest charge of $25.00.

 Portions Copyrighted ©2004 by Bankers Systems, Inc.

**DEFINITIONS:** As used on page 1, "x" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns. "Affiliate" means any lending organization that wholly owns Lender ("Parent") and any lending organization that is wholly owned by Parent.

**APPLICABLE LAW:** The law of the state Texas will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you or me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this note or any other agreement securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence herein.

**PAYMENTS:** Each payment I make on this note shall be applied by holder to such part of the indebtedness as holder may elect. If you and I agree to a different application of payments, we will describe our agreement on this note or by written agreement. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary). Acceptance of one or more late or partial payments shall not constitute a waiver of any default nor of holder's right to receive timely payment. Acceptance of any partial payment after default and acceleration shall not constitute a reinstatement of the pre-acceleration agreement including, nor shall it impair any of the holder's rights or remedies or prejudice any of the holder's other rights.

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** If the interest is based upon an Index, the index will serve only as a means to set the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the last day of the last scheduled payment or the day you accelerate payment of this note on the date you accelerate payment on this note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:

(1) any deposit account balance I have with you;

(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and

(3) any repurchase agreement, patronage, dividend, equities or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and any remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you or any of your Affiliates; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or to make possible the production of an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M. (In the event that and as long as the note is guaranteed by the Farm Service Agency, Default provision 11 shall apply regardless of any provision(s) to the contrary in any renewal, extension, modification or readjustment of payments).

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:

(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).

(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-off" paragraph herein.

(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.

(4) You may refuse to make advances to me.

(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney (salaried, corporate, or other attorney) to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:

(1) demand payment of amounts due (presentment);

(2) obtain official certification of nonpayment (protest);

(3) give notice that amounts due have not been paid (notice of dishonor);

(4) give notice of intention to accelerate and notice of acceleration; or

(5) exercise diligence in collection, grace, notice and notice of protest.

I waive any defenses I have based on suretyship or impairment of collateral. If someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**CREDIT INFORMATION:** I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. I agree to inform you in writing of any change in my address within 30 days of the change. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

Portions Copyrighted ©2004 by Bankers Systems, Inc.

Loan No.: 268100259
Borrower: Big Racques Ranches, LLC
Assn.: Capital Farm Credit, PCA
Branch: San Antonio

## ADDITIONAL TERMS:

☒ **MAXIMUM RATE DISCLOSURE:** If this note includes a variable rate or an adjustable rate, the holder will notify the maker in writing of any changes in the rate of interest and the amount of any installment payment affected by a change in the rate of interest before the due date of such installment. The notice will include all information required by law to be given. The interest rate will never be greater than 21 %.

☐ **Prepayment**

☒ **Post Default Interest Adjustment .** In addition to the default interest provided for herein, if borrower defaults and such default(s) is not cured within forty-five (45) days of the occurrence of such default(s), the rate of interest (whether fixed, determined in the discretion of holder, by application of a margin to an index, or otherwise) applicable to all unpaid amounts under the note or loan documents may be increased, at the option of the holder of this note, (which will result in a corresponding increase in the default interest rate), provided that the total of all rate increases made pursuant to this sentence (exclusive of the $25.00 default interest charge(s), and the default interest provision established herein) shall not exceed two percent (2.0000 %).

☐ **MAXIMUM OUTSTANDING BALANCE LIMITATION:** Notwithstanding any other provision of this note, the outstanding principal indebtedness shall not at any time exceed without the express written approval of the Lender. The Lender may refuse any requested disbursement that would cause the maximum outstanding balance to be exceeded.

☒ **Security.** The collateral for this note includes (but is not limited to) all real and personal property described in the deeds of trust, mortgages, security agreements, financing statements, guaranties and other security documents (the "Loan Documents") and all other property pledged or given previously or in the future as collateral for this note. Borrower and Lender intend to cross-secure all loans made to Borrower by Lender or any of Lender's Affiliates and all obligations of Borrower to Lender or to Lender's Affiliates, unless the law otherwise prohibits it. All collateral for this note shall remain collateral until this note, and all amounts owed under any of the Loan Documents and any other amount owed to Lender or to Lender's Affiliate (where permitted by law) have been paid in full and a release thereof given by the Lender and/or its Affiliate.

## WAIVER OF TRIAL BY JURY

THE GRANTORS /DEBTORS/BORROWERS/MAKERS/GUARANTORS AND OTHER PARTIES BOUND UNDER THE LOAN DOCUMENTS HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, AND THE LENDER/SECURED PARTY BY ITS ACCEPTANCE OF THE PROMISSORY NOTE AND THE SECURITY AGREEMENT/DEED OF TRUST/MORTGAGE AND OTHER LOAN DOCUMENTS IRREVOCABLY AND UNCONDITIONALLY WAIVES, ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR OTHERWISE RELATING TO THE PROMISSORY NOTE, THE SECURITY AGREEMENT, THE DEED OF TRUST, THE MORTGAGE, GUARANTEE OR ANY OTHER LOAN DOCUMENT OR THE OBLIGATIONS THEREUNDER. ALL OF THE AFORESAID PARTIES SHALL HEREINAFTER BE REFERRED TO AS THE "PARTIES HERETO." THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE PARTIES HERETO WITH FULL AWARENESSOF THE LEGAL CONSEQUENCES OF IT, AND THE PARTIES HERETO HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON OR ENTITY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO ENTERING INTO THIS AGREEMENT. THE PARTIES HERETO ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL. EACH PARTY HERETO FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL AND HAS VOLUNTARILY CHOSEN NOT TO DO SO.

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):

Security Agreement dated:

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

## DISPOSITION OF FUNDS

Deposited to Account Number _____   Check Number _____

**PURPOSE:** The purpose of this loan is Gen. Operating Exp.

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.**

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**

Big Racques Ranches, LLC

By: _____
Randy Balderas, Managing Member

Randy Balderas

Loan No.: 268100259
Borrower: Big Racques Ranches, LLC
Assn.: Capital Farm Credit, PCA
Branch: San Antonio

Capital Farm Credit, PCA

NMLS ID: 493828

Mark Sloan

NMLS ID: 612386

NOTEOPER (Rev. 7/14)

Portions Copyrighted ©2004 by Bankers Systems, Inc.

**PROMISSORY NOTE**
**AMENDMENT**

Loan:           268100259
Name:           Big Racques Ranches, LLC
Association:    Capital Farm Credit, PCA
Credit Office:  San Antonio

On the 28th day of May, 2015, Big Racques Ranches, LLC and Randy Balderas executed a promissory note ("Note") in the original principal sum of $150,000.00 payable to the order of Capital Farm Credit, PCA or one of its predecessors ("Lender"); and

An error was made in the stating of the Accrual Method, and it is the mutual desire of all parties at interest that said error be corrected.

In consideration of the premises and the benefits arising thereunder, the undersigned parties agree that the Accrual Method in the Note shall be corrected to state:

    **ACCRUAL METHOD:** Interest will be calculated on an Actual 365/366 basis.

All of the terms and provisions of the Note shall remain in full force and effect, except as expressly modified in this Amendment. The execution of this Amendment shall not in any way change, alter, or waive any of the rights granted to the Lender by the Note. All security instruments and loan agreements given by the Borrowers shall remain the same and be subject to the same terms, covenants, and conditions as therein agreed, subject only to the amendment as herein provided. This Amendment does not in any way constitute payment of any prior obligation owed by the Borrowers to Lender and shall be attached to the Note evidencing the obligation.

Dated this ___13___ day of ___April___, 2016.

Big Racques Ranches, LLC

By: _____         By: _____
    Randy Balderas, Managing Member             Jeremy Lightfoot
                                                        VP Relationship Manager

_____
Randy Balderas

**EXHIBIT C**

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| Big Racques Ranches, LLC, 748 E Hinds, Charlotte, TX 78011;<br>Randy Balderas, PO Box 891, Charlotte, TX 78011 | Capital Farm Credit, PCA whose address is<br>3000 Briarcrest Dr. Suite 601, Bryan, TX  77802 |

Type: ☒ individual ☐ decedent estate ☐ partnership ☐ corporation ☐ limited partnership ☒ limited liability company
☐ trust ☐ limited liability partnership  State of organization/registration (if applicable) TX_____
☐ If checked, refer to addendum for additional Debtors and signatures.

Loan No.:  268100259

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is  *5/28/15* .

**SECURED DEBTS.**    This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and payment and performance of the following described Secured Debts owed to Secured Party by: Randy Balderas, Big Racques Ranches, LLC.

☐   **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒   **All Debts.** All present and future debts, regardless of whether this Agreement is referenced, such debts are secured by other collateral, or whether the future debt is unrelated to or of a different type than the current debt, and including those debts owed by Debtor or Borrower to any of Secured Party's affiliated or subsidiary institutions, including but not limited to Capital Farm Credit, ACA and/or to Capital Farm Credit, FLCA, or their respective successors or assigns. Any lien created hereby for an Affiliate or subsidiary shall be inferior and secondary to the lien created in favor of Secured Party.  Secured Party and/or its Affiliates or subsidiaries may make future advances to Debtor or Borrower and/or may transfer the debt instruments from one Affiliate or subsidiary to another and this Security Agreement shall further secure the payment to Secured Party or to Affiliates or subsidiaries of all such future advances. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.**    To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; and original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

☐ Debtor expressly acknowledges a purchase money security interest in the Property as security for the Secured Debts secured by this security agreement, which represents funds advanced by Secured Party at Debtor's request and used in the payment of the purchase price of the Property.

**PROPERTY DESCRIPTION.**    All of Debtor's interest in stock, participation certificates and/or other equity interests in Secured Party, including but not limited to all Debtor's interest in dividends, whether paid in cash or in stock or participation certificates, and in all allocated surplus or allocated equity in Secured Party, including but not limited to exchanged or converted equity, and all proceeds thereof to which Debtor may be entitled to receive on account of said property.

All livestock now owned and hereafter acquired but not limited to: 13 Black Motley cross-bred heifers, 17 Brangus cross-bred heifers, 20 Black Motley and Brangus cross-bred exposed heifers, 3 Brangus certified bulls , 1 registered Brangus bull, 50 crossbred heifers and 2 Brangus Bulls.

1 Zimmatic, Z Tech non tow pivot system, 742' long, 3-179' spans, 1-157'span, 6 5/8" pipe, 8500P Series, SN# LD3680, 1 Zimmatic, Z Tech non tow pivot system, 450' long, 2-179' spans, 6 5/8" pipe, 8500P Series, SN# LD3679, 1 Zimmatic, Z Tech non tow pivot system, 2 Towers, 494' long, 2-201' spans, 6 5/8" pipe, 8500P Series, SN# LD4454 .

This loan is Cross-collateralized with Loan No. 268100259

**GENERAL PROVISIONS.** Each debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:

(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;

(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;

(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and

(4) debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products and Debtor consents to the use of Debtor's Social Security or Tax Identification Number when notice of Secured Party's security interest is given to them. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property or, if applicable, one or more amendments to existing financing statements adding the Property and/or additional Debtors. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:

(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;

(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;

(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts.

(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:

(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;

(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;

(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;

(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorney's fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on Property

WAIVER OF TRIAL BY JURY
THE GRANTORS /DEBTORS/BORROWERS/MAKERS/GUARANTORS AND OTHER PARTIES BOUND UNDER THE LOAN DOCUMENTS HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, AND THE LENDER/SECURED PARTY BY ITS ACCEPTANCE OF THE PROMISSORY NOTE AND THE SECURITY AGREEMENT/DEED OF TRUST/MORTGAGE AND OTHER LOAN DOCUMENTS IRREVOCABLY AND UNCONDITIONALLY WAIVES, ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR OTHERWISE RELATING TO THE PROMISSORY NOTE, THE SECURITY AGREEMENT, THE DEED OF TRUST, THE MORTGAGE, GUARANTEE OR ANY OTHER LOAN DOCUMENT OR THE OBLIGATIONS THEREUNDER. ALL OF THE AFORESAID PARTIES SHALL HEREINAFTER BE REFERRED TO AS THE "PARTIES HERETO." THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE PARTIES HERETO WITH FULL AWARENESSOF THE LEGAL CONSEQUENCES OF IT, AND THE PARTIES HERETO HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON OR ENTITY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO ENTERING INTO THIS AGREEMENT. THE PARTIES HERETO ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL. EACH PARTY HERETO FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL AND HAS VOLUNTARILY CHOSEN NOT TO DO SO.

COLLATERAL PROTECTION INSURANCE NOTICE
As part of this Agreement, Debtor gives Secured Party a security interest in the Property described on page 1. Debtor is required to maintain insurance on the Property in an amount Secured Party specifies, subject to applicable law. Debtor agrees to purchase the insurance from an insurer authorized to do business in Texas or an eligible surplus lines insurer to the extent permitted by law. Debtor will name Secured Party as loss payee on the insurance policy. Debtor may be required to deliver a copy of the property insurance policy and proof of payment of premiums to Secured Party. If Debtor fails to meet any of these requirements, Secured Party may obtain collateral protection insurance on Debtor's behalf. Secured Party is not required to purchase any type or amount of insurance. Secured Party may obtain replacement cost insurance if authorized under applicable law, subject to policy limits. If Secured Party purchases insurance for the Property, Debtor will be responsible for the cost of that insurance, including interest and any other charges incurred by Secured Party in connection with the placement of collateral protection insurance to the extent permitted by law. Debtor understands that insurance obtained by Secured Party may cost significantly greater than the cost of insurance Debtor could have obtained. Amounts that Debtor owes are due and payable upon demand or on such other terms as Secured Party requires to the extent permitted by law.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN PARTIES.

☐ **Specific Property Description.** The Property includes, but is not limited by, the following (if required, provide real estate description):

**USE OF PROPERTY.** The Property will be used for

☐ personal  ☐ business  ☒ agricultural  ☐ other purposes; specify:

**Signatures.** Debtor agrees to the terms on pages 1, 2, and 3 of this Agreement and acknowledges receipt of a copy of this Agreement.

Loan No.:   268100259
Borrower:   Big Racques Ranches, LLC
Assn:       Capital Farm Credit, PCA
Branch:     San Antonio

## DEBTOR

Big Racques Ranches, LLC

By:
Randy Balderas, Managing Member

Randy Balderas

Capital Farm Credit, PCA
NMLS ID: 493828
Mark Sloan
NMLS ID: 612386

**EXHIBIT D**




# Promissory Note

| | | | |
|---|---|---|---|
| Big Racques Ranches, LLC, PO Box 891, Charlotte, TX, 78011<br>Randy Balderas PO Box 891, Charlotte, TX, 78011 | Capital Farm Credit, PCA whose address is<br>3000 Briarcrest Dr. Suite 601<br>Bryan, TX 77802 | Loan Number | 268100262 |
| | | Date | 06/24/2015 |
| | | Maturity Date | 07/01/2020 |
| | | Loan Amount | $165,600.00 |
| **BORROWER'S NAME AND ADDRESS**<br>"I", whether individually, or jointly and severally,<br>includes any and all of the undersigned. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | Renewal Of | |

For value received, I, whether individually, or jointly and severally, promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of <u>One Hundred Sixty Five Thousand Six Hundred And Zero/100</u> Dollars $( <u>165,600.00</u>).

☒ **Single Advance:** No additional advances are contemplated under this note.

☐ **Multiple Advance:** The Principal sum shown above is the maximum amount of principal I can borrow under this note. I will receive an initial advance in the amount of $_____ and future principal advances are contemplated.

    ☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on

    ☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from the date principal is advanced until paid at the rate or rates herein provided.

    The initial rate of interest payable on this note shall be 4.7300 percent per annum. Following closing and beginning on the first day of every successive calendar month thereafter (the "Interest Rate Change Date") until maturity the interest rate shall be 454.0000 basis points (4.54 percentage points) above (the "Margin") the One-Month London Interbank Offered Rate ("LIBOR") as quoted in the "Money Rates" section of the Wall Street Journal on the last business day of the prior month and rounded to the nearest basis point (0.01 percentage point) (the "Index"). The interest rate will change during the term of the loan until maturity on each Interest Rate Change Date if there is a change in the Index. In the event the Wall Street Journal or the LIBOR interest rate is no longer available as a source for the Index the Lender may select another source of comparable information in its sole discretion. The rate shall not exceed the maximum lawful rate applicable to the holder.

**ACCRUAL METHOD:** Interest will be calculated on a <u>Actual 365/366</u> basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:

    ☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).

    ☒ at a rate equal to the rate of interest applicable to this note on the date of maturity plus an additional <u>four</u> percent <u>(4.000 %)</u> per annum.

**PAYMENT:** I agree to pay this note as follows:

The indebtedness shall be payable in <u>Five</u> ( <u>5</u> ) <u>Annual</u> installments beginning on <u>July 01, 2016</u> and thereafter on the first day of <u>each July</u> of each calendar year until the Maturity Date <u>when the indebtedness, both principal and interest, must be fully paid.</u>

    ☐ Interest only payment(s) shall be payable on the installment due date(s).

    After the initial payment of interest only (if applicable), this note shall be payable:

        ☒ in successive equal installments of principal and interest in an amount sufficient to amortize the indebtedness over <u>the term of the loan</u>, the amount being subject to adjustment to reflect any increase or decrease in the interest rate, if applicable.

        ☐ in successive installments of principal in the amount of $ plus accrued interest on the unpaid principal balance.

I understand and agree that the first installment will include all interest accrued on the unpaid principal balance from the date principal is first advanced.

**DEFAULT INTEREST:** Prior to maturity of this note, any amount owing under this note which is not paid when due, and any advance made by the holder of this note pursuant to any of the Loan Documents, shall bear interest at a default rate equal to the rate in effect at the time repayment of such amount or advance is received by the holder of this note plus an additional four percent (4.000 %) per annum. Any such amount or advance which is not paid prior to maturity of this note shall bear interest at a default rate equal to the rate of interest applicable on the date of maturity plus an additional four percent (4.000 %) per annum from the date such amount is due or such advance is made, and such amount or advance plus accrued default interest thereon shall be added to the unpaid principal at maturity. Notwithstanding the foregoing, if the holder of this note is not a Farm Credit System Institution, then the default rate shall be limited so that it shall not exceed a rate that will result in an effective yield in excess of the maximum lawful rate. If any amount owed under this note or the loan documents is not paid when due, the holder shall be entitled to collect default interest from the date(s) of default in an amount produced by applying the applicable default interest rate as set out above to the amount in default. If said default(s) is not cured within fifteen (15) days of the occurrence of such default(s), the holder shall be entitled to collect an additional default interest charge of $25.00.

**DEFINITIONS:** As used on page 1, "x" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns. "Affiliate" means any lending organization that wholly owns Lender ("Parent") and any lending organization that is wholly owned by Parent.

**APPLICABLE LAW:** The law of the state of Texas will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this note or any agreement securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence in this agreement.

**PAYMENTS:** Each payment I make on this note shall be applied by holder to such part of the indebtedness as holder may elect. If you and I agree to a different application of payments, we will describe our agreement on this note or by written agreement. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary). Acceptance of one or more late or partial payments shall not constitute a waiver of any default nor of holder's right to receive timely payment. Acceptance of any partial payment after default and acceleration shall not constitute a reinstatement of the pre-acceleration payment schedule, nor shall it impair any of the holder's rights or remedies or prejudice any of the holder's other rights.

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** If the interest is based upon an Index, the index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay on my behalf charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:

(1) any deposit account balance I have with you;

(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and

(3) any repurchase agreement, patronage, dividend, equities or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check, or draft when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you or with any of your Affiliates; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to operate in a husbandlike manner; or (11) if the Farm Service Agency either guarantees this note or has a junior lien on collateral securing this note, and the loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or to make possible the production of an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M. ( In the event that and so long as the note is guaranteed by the Farm Service Agency, Default provision 11 shall apply regardless of any provision(s) to the contrary in any renewal, extension, modification or readjustment of payments.)

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:

(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).

(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-off" paragraph herein.

(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.

(4) You may refuse to make advances to me.

(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare any event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney (salaried, corporate, or other attorney) to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:

(1) demand payment of amounts due (presentment);

(2) obtain official certification of nonpayment (protest);

(3) give notice that amounts due have not been paid (notice of dishonor);

(4) give notice of intention to accelerate and notice of acceleration; or

(5) exercise diligence in collection, grace, notice and notice of protest.

I waive any defenses I have based on suretyship or impairment or release of collateral. To the extent permitted by law, I also waive all personal property exemptions in the property securing this loan.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**CREDIT INFORMATION:** I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. I agree to inform you in writing of any change in my address within 30 days of the change. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

**ADDITIONAL TERMS:**

☒ MAXIMUM RATE DISCLOSURE:    If this note includes a variable rate or an adjustable rate, the holder will notify the maker in writing of any changes in the rate of interest and the amount of any installment payment affected by a change in the rate of interest before the due date of such installment. The notice will include all information required by law to be given. The interest rate will never be greater than 21%.

☐ Prepayment .

☒ Post Default Interest Adjustment .

In addition to the default interest provided for herein, if borrower defaults and such default(s) is not cured within forty-five (45) days of the occurrence of such default(s), the rate of interest (whether fixed, determined in the discretion of holder, by application of a margin to an index, or otherwise) applicable to all unpaid amounts under the note or loan documents may be increased, at the option of the holder of this note, (which will result in a corresponding increase in the default interest rate), provided that the total of all rate increases made pursuant to this sentence (exclusive of the $25.00 default interest charge(s), and the default interest provision established herein) shall not exceed two percent (2.0000 %).

☒ Security. The collateral for this note includes (but is not limited to) all real and personal property described in the deeds of trust, mortgages, security agreements, financing statements, guaranties and other security documents (the "Loan Documents") and all other property pledged or given previously or in the future as collateral for this note. Borrower and Lender intend to cross-secure all loans made to Borrower by Lender or any of Lender's Affiliates and all obligations of Borrower to Lender or to Lender's Affiliates, unless the law otherwise prohibits it. All collateral for this note shall remain collateral until this note, all amounts owed under any of the Loan Documents and any other amount owed to Lender or to Lender's Affiliate (where permitted by law) have been paid in full and a release thereof given by the Lender and/or its Affiliate.

**WAIVER OF TRIAL BY JURY**
THE GRANTORS /DEBTORS/BORROWERS/MAKERS/GUARANTORS AND OTHER PARTIES BOUND UNDER THE LOAN DOCUMENTS HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, AND THE LENDER/SECURED PARTY BY ITS ACCEPTANCE OF THE PROMISSORY NOTE AND THE SECURITY AGREEMENT/DEED OF TRUST/MORTGAGE AND OTHER LOAN DOCUMENTS IRREVOCABLY AND UNCONDITIONALLY WAIVES, ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR OTHERWISE RELATING TO THE PROMISSORY NOTE, THE SECURITY AGREEMENT, THE DEED OF TRUST, THE MORTGAGE, GUARANTEE OR ANY OTHER LOAN DOCUMENT OR THE OBLIGATIONS THEREUNDER. ALL OF THE AFORESAID PARTIES SHALL HEREINAFTER BE REFERRED TO AS THE "PARTIES HERETO." THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE PARTIES HERETO WITH FULL AWARENESSOF THE LEGAL CONSEQUENCES OF IT, AND THE PARTIES HERETO HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON OR ENTITY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO ENTERING INTO THIS AGREEMENT. THE PARTIES HERETO ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL. EACH PARTY HERETO FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL AND HAS VOLUNTARILY CHOSEN NOT TO DO SO.

☒ SECURITY: This note is separately secured by (describe separate document by type and date):

Security Agreement dated:        June 24, 2015

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

DISPOSITION OF FUNDS

_____        _____
Deposited to Account Number                Check Number

**PURPOSE:** The purpose of this loan is Cows

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU <u>SIGN</u> IT.

Big Racques Ranches, LLC

By: _____
    Randy Balderas, Managing Member

_____
Randy Balderas


Capital Farm Credit, PCA

NMLS ID: 493828

Mark Sloan

NMLS ID: 612386

**EXHIBIT E**

{C1545662.DOCX:1}

**HUB**

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| Big Racques Ranches, LLC, PO Box 891, Charlotte, TX 78011; | Capital Farm Credit, PCA whose address is 3000 Briarcrest Dr. Suite 601, Bryan, TX 77802 |

Type: ☐ individual ☐ decedent estate ☐ partnership ☐ corporation ☐ limited partnership ☒ limited liability company
☐ trust ☐ limited liability partnership     State of organization/registration (if applicable) TX_____
☐ If checked, refer to addendum for additional Debtors and signatures.

Loan No.:   268100262

# COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is June 24, 2015.

**SECURED DEBTS.**     This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and payment and performance of the following described Secured Debts owed to Secured Party by: <u>Randy Balderas, Big Racques Ranches, LLC</u>.

☐  **Specific Debts.**  The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒  **All Debts.** All present and future debts, regardless of whether this Agreement is referenced, such debts are secured by other collateral, or whether the future debt is unrelated to or of a different type than the current debt, and including those debts owed by Debtor or Borrower to any of Secured Party's affiliated or subsidiary institutions, including but not limited to Capital Farm Credit, ACA and/or Capital Farm Credit, FLCA, or their respective successors or assigns.  Any lien created hereby for an Affiliate or subsidiary shall be inferior and secondary to the lien created in favor of Secured Party.  Secured Party and/or its Affiliates or subsidiaries may make future advances to Debtor or Borrower and/or may transfer the debt instruments from one Affiliate or subsidiary to another and this Security Agreement shall further secure the payment to Secured Party or to Affiliates or subsidiaries of all such future advances.  Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.**     To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; and original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

☐  Debtor expressly acknowledges a purchase money security interest in the Property as security for the Secured Debts secured by this security agreement, which represents funds advanced by Secured Party at Debtor's request and used in the payment of the purchase price of the Property.

**PROPERTY DESCRIPTION.**     All of Debtor's interest in stock, participation certificates and/or other equity interests in Secured Party, including but not limited to all Debtor's interest in dividends, whether paid in cash or in stock or participation certificates, and in all allocated surplus or allocated equity in Secured Party, including but not limited to exchanged or converted equity, and all proceeds thereof to which Debtor may be entitled to receive on account of said property.

All livestock now owned and hereafter acquired but not limited to:  A purchase money security interest in 86 Brangus bred heifers.



**GENERAL PROVISIONS.** Each debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:

(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;

(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;

(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and

(4) debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products and Debtor consents to the use of Debtor's Social Security or Tax Identification Number when notice of Secured Party's security interest is given to them. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property or, if applicable, one or more amendments to existing financing statements adding the Property and/or additional Debtors. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:

(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;

(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;

(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts.

(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:

(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;

(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;

(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;

(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorney's fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on Property

## WAIVER OF TRIAL BY JURY

THE GRANTORS /DEBTORS/BORROWERS/MAKERS/GUARANTORS AND OTHER PARTIES BOUND UNDER THE LOAN DOCUMENTS HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, AND THE LENDER/SECURED PARTY BY ITS ACCEPTANCE OF THE PROMISSORY NOTE AND THE SECURITY AGREEMENT/DEED OF TRUST/MORTGAGE AND OTHER LOAN DOCUMENTS IRREVOCABLY AND UNCONDITIONALLY WAIVES, ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR OTHERWISE RELATING TO THE PROMISSORY NOTE, THE SECURITY AGREEMENT, THE DEED OF TRUST, THE MORTGAGE, GUARANTEE OR ANY OTHER LOAN DOCUMENT OR THE OBLIGATIONS THEREUNDER. ALL OF THE AFORESAID PARTIES SHALL HEREINAFTER BE REFERRED TO AS THE "PARTIES HERETO." THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE PARTIES HERETO WITH FULL AWARENESSOF THE LEGAL CONSEQUENCES OF IT, AND THE PARTIES HERETO HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON OR ENTITY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO ENTERING INTO THIS AGREEMENT. THE PARTIES HERETO ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL. EACH PARTY HERETO FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL AND HAS VOLUNTARILY CHOSEN NOT TO DO SO.

## COLLATERAL PROTECTION INSURANCE NOTICE

As part of this Agreement, Debtor gives Secured Party a security interest in the Property described on page 1. Debtor is required to maintain insurance on the Property in an amount Secured Party specifies, subject to applicable law. Debtor agrees to purchase the insurance from an insurer authorized to do business in Texas or an eligible surplus lines insurer to the extent permitted by law. Debtor will name Secured Party as loss payee on the insurance policy. Debtor may be required to deliver a copy of the property insurance policy and proof of payment of premiums to Secured Party. If Debtor fails to meet any of these requirements, Secured Party may obtain collateral protection insurance on Debtor's behalf. Secured Party is not required to purchase any type or amount of insurance. Secured Party may obtain replacement cost insurance if authorized under applicable law, subject to policy limits. If Secured Party purchases insurance for the Property, Debtor will be responsible for the cost of that insurance, including interest and any other charges incurred by Secured Party in connection with the placement of collateral protection insurance to the extent permitted by law. Debtor understands that insurance obtained by Secured Party may cost significantly greater than the cost of insurance Debtor could have obtained. Amounts that Debtor owes are due and payable upon demand or on such other terms as Secured Party requires to the extent permitted by law.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN PARTIES.

☐ **Specific Property Description.** The Property includes, but is not limited by, the following (if required, provide real estate description):

**USE OF PROPERTY.** The Property will be used for

☐ personal ☐ business ☒ agricultural ☐ other purposes; specify:

**Signatures.** Debtor agrees to the terms on pages 1, 2, and 3 of this Agreement and acknowledges receipt of a copy of this Agreement.

### DEBTOR

Big Racques Ranches, LLC

By: _____
Randy Balderas, Managing Member

Capital Farm Credit, PCA

NMLS ID: 493828

Mark Sloan

NMLS ID: 612386

**EXHIBIT F**



# Promissory Note

| | | |
|---|---|---|
| Big Racques Ranches, LLC, PO Box 891, Charlotte, TX, 78011<br>Randy Balderas PO Box 891, Charlotte, TX, 78011<br><br>**BORROWER'S NAME AND ADDRESS**<br>"I", whether individually, or jointly and severally, includes any and all of the undersigned. | Capital Farm Credit, PCA whose address is 3000 Briarcrest Dr. Suite 601 Bryan, TX 77802<br><br><br>**LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | Loan Number  268100275<br>Date  December 16, 2015<br>Maturity Date  12/01/2020<br>Loan Amount  $34,000.00<br>Renewal Of  _____ |

For value received, I, whether individually, or jointly and severally, promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of Thirty Four Thousand And Zero/100  Dollars $( 34,000.00).

☒ **Single Advance:**  No additional advances are contemplated under this note.

☐ **Multiple Advance:**  The Principal sum shown above is the maximum amount of principal I can borrow under this note. I will receive an initial advance in the amount of $_____ and future principal advances are contemplated.

☐ **Open End Credit:**  You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on

☐ **Closed End Credit:**  You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:**  I agree to pay interest on the outstanding principal balance from the date principal is advanced until paid at the rate or rates herein provided.

The initial rate of interest payable on this note shall be 4.9400 percent per annum. Following closing and beginning on the first day of every successive calendar month thereafter (the "Interest Rate Change Date") until maturity the interest rate shall be 452.0000 basis points (4.52 percentage points) above (the "Margin") the One-Month London Interbank Offered Rate ("LIBOR") as quoted in the "Money Rates" section of the Wall Street Journal on the last business day of the prior month and rounded to the nearest basis point (0.01 percentage points) (the "Index"). The interest rate will change during the term of the loan until maturity on each Interest Rate Change Date if there is a change in the Index. In the event the Wall Street Journal or the LIBOR interest rate is no longer available as a source for the Index the Lender may select another source of comparable information in its sole discretion. The rate shall not exceed the maximum lawful rate applicable to the holder.

**ACCRUAL METHOD:**  Interest will be calculated on a Actual 365/366 basis.

**POST MATURITY RATE:**  I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:

☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).

☒ at a rate equal to the rate of interest applicable to this note on the date of maturity plus an additional four percent (4.000 %) per annum.

**PAYMENT:**  I agree to pay this note as follows:

The indebtedness shall be payable in Five ( 5 )  Annual  installments beginning on December 01, 2016 and thereafter on the first day of each December of each calendar year until the Maturity Date  when the indebtedness, both principal and interest, must be fully paid.

☐ Interest only payment(s) shall be payable on the  installment due date(s).

After the initial payment of interest only (if applicable), this note shall be payable:

☒ in successive equal installments of principal and interest in an amount sufficient to amortize the indebtedness over the term of the loan, the amount being subject to adjustment to reflect any increase or decrease in the interest rate, if applicable.

☐ in successive installments of principal in the amount of $  plus accrued interest on the unpaid principal balance.

I understand and agree that the first installment will include all interest accrued on the unpaid principal balance from the date principal is first advanced.

**DEFAULT INTEREST:**  Prior to maturity of this note, any amount owing under this note which is not paid when due, and any advance made by the holder of this note pursuant to any of the Loan Documents, shall bear interest at a default rate equal to the rate in effect at the time repayment of such amount or advance is received by the holder of this note plus an additional four percent (4.000 %) per annum. Any such amount or advance which is not paid prior to maturity of this note shall bear interest at a default rate equal to the rate of interest applicable on the date of maturity plus an additional four percent (4.000 %) per annum from the date such amount is due or such advance is made, and such amount or advance plus accrued default interest thereon shall be added to the unpaid principal at maturity. Notwithstanding the foregoing, if the holder of this note is not a Farm Credit System Institution, then the default rate shall be limited so that it shall not exceed a rate that will result in an effective yield in excess of the maximum lawful rate. If any amount owed under this note or the loan documents is not paid when due, the holder shall be entitled to collect default interest from the date(s) of default in an amount produced by applying the applicable default interest rate as set out above to the amount in default. If said default(s) is not cured within fifteen (15) days of the occurrence of such default(s), the holder shall be entitled to collect an additional default interest charge of $25.00.

   Portions Copyrighted ©2005 by Bankers Systems, Inc.

**DEFINITIONS:** As used on page 1, "x" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns. "Affiliate" means any lending organization that wholly owns Lender ("Parent") and any lending organization that is wholly owned by Parent.

**APPLICABLE LAW:** The law of the state of Texas will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this note or any agreement securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence in this agreement.

**PAYMENTS:** Each payment I make on this note shall be applied by holder to such part of the indebtedness as holder may elect. If you and I agree to a different application of payments, we will describe our agreement on this note or by written agreement. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary). Acceptance of one or more late or partial payments shall not constitute a waiver of any default nor of holder's right to receive timely payment. Acceptance of any partial payment after default and acceleration shall not constitute a reinstatement of the pre-acceleration payment schedule, nor shall it impair any of the holder's rights or remedies or prejudice any of the holder's other rights.

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** If the interest is based upon an Index, the index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay on my behalf charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:

(1) any deposit account balance I have with you;

(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and

(3) any repurchase agreement, patronage, dividend, equities or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check, or draft when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you or with any of your Affiliates; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to operate in a husbandlike manner; or (11) if this is the Farm Service Agency either guarantees this note or has a junior lien on collateral securing this note, and the loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or to make possible the production of an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M. ( In the event that and so long as the note is guaranteed by the Farm Service Agency, Default provision 11 shall apply regardless of any provision(s) to the contrary in any renewal, extension, modification or readjustment of payments.)

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:

(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).

(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-off" paragraph herein.

(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.

(4) You may refuse to make advances to me.

(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare any event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney (salaried, corporate, or other attorney) to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:

(1) demand payment of amounts due (presentment);

(2) obtain official certification of nonpayment (protest);

(3) give notice that amounts due have not been paid (notice of dishonor);

(4) give notice of intention to accelerate and notice of acceleration; or

(5) exercise diligence in collection, grace, notice and notice of protest.

I waive any defenses I have based on suretyship or impairment or release of collateral. To the extent permitted by law, I also waive all personal property exemptions in the property securing this loan.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**CREDIT INFORMATION:** I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. I agree to inform you in writing of any change in my address within 30 days of the change. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

## ADDITIONAL TERMS:

☒ MAXIMUM RATE DISCLOSURE:   If this note includes a variable rate or an adjustable rate, the holder will notify the maker in writing of any changes in the rate of interest and the amount of any installment payment affected by a change in the rate of interest before the due date of such installment. The notice will include all information required by law to be given. The interest rate will never be greater than 21%.

☐ Prepayment .

☒ Post Default Interest Adjustment .

In addition to the default interest provided for herein, if borrower defaults and such default(s) is not cured within forty-five (45) days of the occurrence of such default(s), the rate of interest (whether fixed, determined in the discretion of holder, by application of a margin to an index, or otherwise) applicable to all unpaid amounts under the note or loan documents may be increased, at the option of the holder of this note, (which will result in a corresponding increase in the default interest rate), provided that the total of all rate increases made pursuant to this sentence (exclusive of the $25.00 default interest charge(s), and the default interest provision established herein) shall not exceed two percent (2.0000 %).

☒ Security.  The collateral for this note includes (but is not limited to) all real and personal property described in the deeds of trust, mortgages, security agreements, financing statements, guaranties and other security documents (the "Loan Documents") and all other property pledged or given previously or in the future as collateral for this note.  Borrower and Lender intend to cross-secure all loans made to Borrower by Lender or any of Lender's Affiliates and all obligations of Borrower to Lender or to Lender's Affiliates, unless the law otherwise prohibits it. All collateral for this note shall remain collateral until this note, all amounts owed under any of the Loan Documents and any other amount owed to Lender or to Lender's Affiliate (where permitted by law) have been paid in full and a release thereof given by the Lender and/or its Affiliate.

**WAIVER OF TRIAL BY JURY**
**THE GRANTORS /DEBTORS/BORROWERS/MAKERS/GUARANTORS AND OTHER PARTIES BOUND UNDER THE LOAN DOCUMENTS HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, AND THE LENDER/SECURED PARTY BY ITS ACCEPTANCE OF THE PROMISSORY NOTE AND THE SECURITY AGREEMENT/DEED OF TRUST/MORTGAGE AND OTHER LOAN DOCUMENTS IRREVOCABLY AND UNCONDITIONALLY WAIVES, ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR OTHERWISE RELATING TO THE PROMISSORY NOTE, THE SECURITY AGREEMENT, THE DEED OF TRUST, THE MORTGAGE, GUARANTEE OR ANY OTHER LOAN DOCUMENT OR THE OBLIGATIONS THEREUNDER. ALL OF THE AFORESAID PARTIES SHALL HEREINAFTER BE REFERRED TO AS THE "PARTIES HERETO." THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE PARTIES HERETO WITH FULL AWARENESSOF THE LEGAL CONSEQUENCES OF IT, AND THE PARTIES HERETO HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON OR ENTITY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO ENTERING INTO THIS AGREEMENT. THE PARTIES HERETO ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL. EACH PARTY HERETO FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL AND HAS VOLUNTARILY CHOSEN NOT TO DO SO.**

| |
|---|
| ☒ SECURITY: This note is separately secured by (describe separate document by type and date): |
| December 16, 2015 |
| Security Agreement dated:          December 16, 2015 |
| (This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) |

| |
|---|
| DISPOSITION OF FUNDS |
| Deposited to Account Number          Check Number |

**PURPOSE:** The purpose of this loan is Equipment: Purchase pivots.

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).**  I have received a copy on today's date.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.

Big Racques Ranches, LLC



By: _____
    Randy Balderas, Managing Member

_____
Randy Balderas


Capital Farm Credit, PCA

NMLS ID: 493828

Mark Sloan

NMLS ID: 612386

**EXHIBIT G**

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| Big Racques Ranches, LLC, PO Box 891, Charlotte, TX 78011; Randy Balderas, PO Box 891, Charlotte, TX 78011 | Capital Farm Credit, PCA whose address is 3000 Briarcrest Dr. Suite 601, Bryan, TX 77802 |

Type: ☒ individual ☐ decedent estate ☐ partnership ☐ corporation ☐ limited partnership ☒ limited liability company
☐ trust ☐ limited liability partnership State of organization/registration (if applicable) TX_____
☐ If checked, refer to addendum for additional Debtors and signatures.

Loan No.: 268100275

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is December 16, 2015.

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and payment and performance of the following described Secured Debts owed to Secured Party by: Randy Balderas, Big Racques Ranches, LLC.

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ **All Debts.** All present and future debts, regardless of whether this Agreement is referenced, such debts are secured by other collateral, or whether the future debt is unrelated to or of a different type than the current debt, and including those debts owed by Debtor or Borrower to any of Secured Party's affiliated or subsidiary institutions, including but not limited to Capital Farm Credit, ACA and/or to Capital Farm Credit, FLCA, or their respective successors or assigns. Any lien created hereby for an Affiliate or subsidiary shall be inferior and secondary to the lien created in favor of Secured Party. Secured Party and/or its Affiliates or subsidiaries may make future advances to Debtor or Borrower and/or may transfer the debt instruments from one Affiliate or subsidiary to another and this Security Agreement shall further secure the payment to Secured Party or to Affiliates or subsidiaries of all such future advances. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; and original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

☐ Debtor expressly acknowledges a purchase money security interest in the Property as security for the Secured Debts secured by this security agreement, which represents funds advanced by Secured Party at Debtor's request and used in the payment of the purchase price of the Property.

**PROPERTY DESCRIPTION.** All of Debtor's interest in stock, participation certificates and/or other equity interests in Secured Party, including but not limited to all Debtor's interest in dividends, whether paid in cash or in stock or participation certificates, and in all allocated surplus or allocated equity in Secured Party, including but not limited to exchanged or converted equity, and all proceeds thereof to which Debtor may be entitled to receive on account of said property.

A purchase money security interest in all irrigation equipment, facilities, fixtures and appurtenances thereto, now owned or hereafter acquired which items are acknowledged by the Grantor to be fixtures and a part of the real estate, expressly including all additions to and all substitutions and replacements and proceeds thereof, including but not limited to: 1 Zimmatic, non tow pivot system, 4 Towers, 2-179' Spans, 2-157' Spans 6 5/8" Pipe w/ 8500 Series Spans, SN# LD7494, 1 Zimmatic, non tow pivot system, 3 Towers, 3-179' spans, 6 5/8" pipe, 8500P w/8500 Series Span, SN# LD7493, wherever located and now being situated on the following premises: 202.491 acres, out of the Jose Antonio Navarro Survey No. 46, Abstract No. 9, and the Joaquin de la Garza Survey No. 1, Abstract No. 3, Atascosa County, Texas;

Any and all irrigation pumps, column pipe, gear heads, well casing, and underground pipe and tile, now or hereafter located on said premises, which fixtures and/or equipment shall not be removed nor replaced without the prior written consent of Lender; and Grantor hereby covenant and agree to notify the Lender prior to the removal of any of the fixtures named above, whether or not such fixtures are replaced with other property of a similar nature.



**GENERAL PROVISIONS.** Each debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:

(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;

(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;

(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and

(4) debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products and Debtor consents to the use of Debtor's Social Security or Tax Identification Number when notice of Secured Party's security interest is given to them. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly credible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property or, if applicable, one or more amendments to existing financing statements adding the Property and/or additional Debtors. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:

(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;

(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;

(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts.

(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:

(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;

(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;

(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;

(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorney's fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on Property

Portions Copyrighted ©2004 by Bankers Systems, Inc.

**WAIVER OF TRIAL BY JURY**
THE GRANTORS /DEBTORS/BORROWERS/MAKERS/GUARANTORS AND OTHER PARTIES BOUND UNDER
THE LOAN DOCUMENTS HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, AND THE
LENDER/SECURED PARTY BY ITS ACCEPTANCE OF THE PROMISSORY NOTE AND THE SECURITY
AGREEMENT/DEED OF TRUST/MORTGAGE AND OTHER LOAN DOCUMENTS IRREVOCABLY AND
UNCONDITIONALLY WAIVES, ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, SUIT OR
COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR OTHERWISE RELATING TO THE
PROMISSORY NOTE, THE SECURITY AGREEMENT, THE DEED OF TRUST, THE MORTGAGE, GUARANTEE
OR ANY OTHER LOAN DOCUMENT OR THE OBLIGATIONS THEREUNDER. ALL OF THE AFORESAID
PARTIES SHALL HEREINAFTER BE REFERRED TO AS THE "PARTIES HERETO." THIS WAIVER IS
KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE PARTIES HERETO WITH FULL
AWARENESSOF THE LEGAL CONSEQUENCES OF IT, AND THE PARTIES HERETO HEREBY REPRESENT
THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON OR ENTITY TO
INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS
PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO ENTERING INTO THIS
AGREEMENT. THE PARTIES HERETO ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS
SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL. EACH
PARTY HERETO FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE
SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL
COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL
SELECTED OF ITS OWN FREE WILL AND HAS VOLUNTARILY CHOSEN NOT TO DO SO.

**COLLATERAL PROTECTION INSURANCE NOTICE**
As part of this Agreement, Debtor gives Secured Party a security interest in the Property described on page 1. Debtor is required
to maintain insurance on the Property in an amount Secured Party specifies, subject to applicable law. Debtor agrees to purchase
the insurance from an insurer authorized to do business in Texas or an eligible surplus lines insurer to the extent permitted by
law. Debtor will name Secured Party as loss payee on the insurance policy. Debtor may be required to deliver a copy of the
property insurance policy and proof of payment of premiums to Secured Party. If Debtor fails to meet any of these requirements,
Secured Party may obtain collateral protection insurance on Debtor's behalf. Secured Party is not required to purchase any type
or amount of insurance. Secured Party may obtain replacement cost insurance if authorized under applicable law, subject to
policy limits. If Secured Party purchases insurance for the Property, Debtor will be responsible for the cost of that insurance,
including interest and any other charges incurred by Secured Party in connection with the placement of collateral protection
insurance to the extent permitted by law. Debtor understands that insurance obtained by Secured Party may cost significantly
greater than the cost of insurance Debtor could have obtained. Amounts that Debtor owes are due and payable upon demand or
on such other terms as Secured Party requires to the extent permitted by law.

---

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY
NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL
AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN PARTIES.**

---

☐ **Specific Property Description.** The Property includes, but is not limited by, the following (if required, provide real estate
description):

**USE OF PROPERTY.** The Property will be used for

☐ personal    ☐ business    ☒ agricultural    ☐ other purposes; specify:

**Signatures.** Debtor agrees to the terms on pages 1, 2, and 3 of this Agreement and acknowledges receipt of a copy of this
Agreement.

**DEBTOR**

Big Racques Ranches, LLC

By: _____
    Randy Balderas, Managing Member


_____
Randy Balderas


Capital Farm Credit, PCA

NMLS ID: 493828

Mark Sloan

NMLS ID: 612386